STATE of Missouri, Respondent,

v.

Jeffrey L. SCOTT, Appellant.

No. WD 34401.

Missouri Court of Appeals,
Western District.

April 26, 1983.

James L. McMullin, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kelly S. Klopfenstein, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and WASSERSTROM and MANFORD, JJ.

MANFORD, Judge.

This direct appeal follows a judgment entered in accordance with a jury conviction for capital murder and a sentence of life imprisonment without eligibility for parole until a minimum of fifty years has been served. This court is vested with jurisdiction of this appeal. *State v. Martin,* 644 S.W.2d 359 (Mo. banc 1983). The judgment is affirmed.

Two points are presented, which in summary charge that the trial court erred in (1) failing to give MAI–CR2d 2.10 and 2.12 because those instructions are mandatory (pursuant to a directive of the Missouri Supreme Court en banc, February 16, 1982) "in view of state's witness, Odum, that he [appellant] was a principal in the case" and (2) overruling appellant's motion to suppress the introduction of the fingerprint secured at the scene with the fingerprint of appellant taken when he was a juvenile three years earlier and the issuance of a subsequent order to secure his fingerprints because the use of the juvenile prints violated § 211.321, RSMo 1978 and Rule 122.-03, and further, appellant was denied due process when it was ordered that his fingerprints could be retaken after illegal use of the juvenile prints.

The sufficiency of the evidence is not challenged. A brief summary of the pertinent facts suffices.

The record reveals that appellant, accompanied by one Gary Odum, went to the home of an elderly couple in Kansas City, Missouri. When the murder victim, Rebecca Fusso, answered the door, the two forced their way inside by pointing a gun at the victim. Odum testified that he proceeded to search various areas of the house. He heard a gun shot and returned to the living room. Odum observed appellant holding the victim. Odum returned to his search, locating various valuables. Odum heard a scream, returned to the living room area, and observed appellant cutting the victim. Odum testified that appellant repeatedly stabbed the victim, both while she was standing and after she fell to the floor. When Odum asked appellant what he was doing, appellant replied that he was stabbing her to keep her from seeing his [appellant's] face. Odum then observed appellant inflict multiple stab wounds on the murder victim's husband, Joseph Fusso. Odum observed appellant break the handles off of the two knives used in the stabbings. Mrs. Fusso died from her wounds at the scene. Mr. Fusso survived.

Some 20 fingerprints were secured from the scene. An expert for the state testified unequivocally that a print from a metal record-keeping box owned and used by the Fussos and recovered at the scene matched a print from appellant.

Appellant testified on his own behalf, denying any involvement. On cross-examination, he was asked if while incarcerated in the county jail, he phoned Odum in Oklahoma in an attempt to persuade Odum to change his story. Upon his denial, Odum again testified that appellant did make the call and did attempt to persuade him to change his story. Records from the telephone company verified that the call had been made. Appellant again testified that he had called Oklahoma from the county

jail but only to wish another friend a happy new year, and he denied ever talking with Odum.

The evidence closed. The jury returned its finding of guilt. A second hearing was held relative to the death penalty, and the jury recommended life imprisonment without eligibility of parole until a minimum of fifty years was served. After the overruling of timely filed after-trial motions, this appeal followed.

Point (1) is ruled against appellant. Appellant contends that in "cases of this type", the giving of MAI–CR2d 2.10 and 2.12 is mandatory, and the trial court's failure to give those instructions dictates reversal.

■ There is no merit to appellant's contention. What appellant overlooks is that upon the evidence adduced, it was shown appellant was an active participant in the commission of the offense. By such evidence and upon trial, respondent assumed the burden of proving appellant was an active participant and not an aider or abettor or mere accomplice. Odum's testimony revealed that appellant stayed with the victims while Odum searched the house. The evidence further revealed that when Odum heard Mrs. Fusso scream, he again returned to the living room area and observed appellant repeatedly stabbing both victims. The evidence further revealed that Mrs. Fusso died as a direct result of the wounds inflicted. Odum further testified that he observed appellant break off the handles of the two knives used in the stabbings. Fingerprint evidence placed appellant inside the residence. Blood was found at the scene which was type A. The victims had blood type B and Odum had blood type O. Odum testified that he was not certain, but he thought he observed a cut on appellant's thumb. This observation was made later at Odum's house where he observed appellant wash blood from his hands and where appellant removed his blood-stained clothes and put on clothes owned by Odum.

The evidence unquestionably identified appellant as an active participant and not a mere aider and abettor. The record reveals that other instructions submitted were proper and in conformity with MAI–CR2d, and no challenge to those instructions is made herein. Appellant's contention on this point has squarely and precisely been ruled in *State v. Murray,* 630 S.W.2d 577, 580 (Mo. banc 1982) by our state Supreme Court wherein that court held:

MAI–CR2d 2.12, which appellant insists should have been submitted in lieu of those given as the verdict directors for each count, would have allowed the jury to convict appellant if he aided in the crime as an active participant or in a manner less than an active participant and, as noted above, the evidence supported submission of either or both theories of guilt. On the other hand, giving of MAI–CR2d 23.52 permitted the jury to convict appellant only as an active participant. By narrowing the bases for conviction, the giving of MAI–CR2d 23.52 operated to his advantage, not his prejudice and at most was harmless error, Rule 29.12(a), and not a ground for reversal. *State v. Lowery,* 565 S.W.2d 680 (Mo.App. 1978). *See also, State v. McIlvoy,* 629 S.W.2d 333 (Mo.banc 1982).

It has also been held that where the state assumes the burden of proving an accused acts as an active participant, the state is denied any opportunity to rely upon any acts of the accomplice. *State v. Tolson,* 630 S.W.2d 611 (Mo.App.1982). What occurred herein is that respondent assumed the burden of proving appellant was an active participant. The evidence supported a finding that appellant was an active participant. The trial court's failure to instruct the jury under MAI–CR2d 2.10 and 2.12 operated to appellant's advantage, *Murray* and *Tolson, supra,* not his prejudice, and at most was harmless error. Such failure is not grounds for reversal. *See also State v. Haymon,* 639 S.W.2d 843 (Mo.App.1982).

■ Under his final point (2), appellant submits no argument in support of his alleged error. While under the rule (Rule 30.06) there is nothing preserved for review, this court ex gratia takes up the alleged error and disposes of same.

■ Appellant's contention that use of juvenile fingerprint records to identify him

violated § 211.321 and Rule 122.03 has been squarely and precisely ruled against him. In *State v. Conner,* 607 S.W.2d 784, 786–787 (Mo.App.1980), the court stated that the purpose of these provisions "appears to be to prevent a broad, unrestricted use of juvenile records by the general public." In that same case, this court considered the rule in *State ex rel. Arbeiter v. Reagan,* 427 S.W.2d 371, 377 (Mo. banc 1968), along with other sources, and held:

> The use of the defendant's 1973 fingerprint records in this case was not of a nature within the concern outlined above. The use here was not a general public use, but instead was restricted to a narrow use for local investigations by the very agency which originally took the prints under order of the juvenile court and which has had custody of the fingerprint cards ever since. The use of the 1973 fingerprint records made in this case did not violate the policy or scope of Rule 122.03 or the related statute.

The instant case, because of its particular facts and circumstances, comes squarely within the rule in *Conner.*

There is no merit to appellant's point (2) and it is ruled against him.

Judgment affirmed.

All concur.